UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICARDO BONILLA,

                    Petitioner,

          -v-                                    04-CV-0188(MAT)
                                                 **ORDER**
MICHAEL GIAMBRUNO, Superintendent of
Wyoming Correctional Facility

                    Respondent.
_____


## INTRODUCTION

        Petitioner Ricardo Bonilla ("petitioner") filed this *pro se*
petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254
challenging his conviction in Livingston County Court of Attempted
Assault   in    the    First    Degree    (New    York    Penal    Law
§§ 110.00,120.10[1]);  Assault  in  the  Second  Degree  (Penal  Law
§ 120.05[2]); and Criminal Possession of a Weapon in the Fourth
Degree (Penal Law § 265.01[2]).

## FACTUAL AND PROCEDURAL HISTORY

        On November 11, 2000, petitioner stabbed Justin Stanley with
a  steak  knife  during  a  bar  fight.    Petitioner  was  convicted  on
July 19, 2001 following a jury trial before Judge Gerard Alonzo in
Livingston  County  Court.  He  was  sentenced  as  a  second  felony
offender to concurrent, determinate prison terms of ten years on
the   attempted   assault   count,   five   years   on   the   second-degree
assault count, and one year on the weapon possession count.

**A.    The Trial**

**1.    The People's Case**

On Friday, November 10, 2000, at approximately 7:30 p.m., petitioner was drinking beer with some friends at the home of Maria Cruz in the Village of Mount Morris, New York. That evening petitioner, a Hispanic male, wore a white cut-off jersey-style shirt, with an eggplant-colored shirt underneath. He also had a goatee-style beard. Around 9:00 p.m., Maria's brother Pedro made himself a sandwich in the kitchen using a green-handled steak knife. Pedro thereafter saw the petitioner take the same steak knife and place it in his [petitioner's] pocket. Around 9:30 p.m., petitioner, Pedro, and their friends left Maria's house and went to Fred's Tavern. T. 167-69, 184-87, 196, 259, 302, 319-20, 325-26.[1]

Luisa Cruz, petitioner's girlfriend, met the group at the bar with her sister. Justin Stanley ("Stanley" or "the victim"), a friend of Luisa's, was also at the bar. Later in the evening, petitioner became upset and poured a beer on Luisa. Petitioner then walked out of the bar, with Luisa following. Stanley also went outside to make sure Luisa was "okay". Petitioner and Luisa argued, and petitioner told her that "he had a knife and that he wasn't afraid to use it". Luisa, however, did not see the knife. She then went home to take a shower and returned to the bar at about midnight. T. 192-94, 304-05, 309-10, 321.

---

[1] Citations to "T.__" refer to the trial transcript; citations to "A.__" refer to the arraignment transcript; and citations to "S.__" refer to the sentencing transcript.

Sometime around midnight, a confrontation occurred between Stanley and several Hispanic men outside of the bar. During the melee, petitioner walked up to Stanley, stabbed him in the left side, and said "this is what you're fucking dealing with when you fuck with my friends." As Stanley fell to the ground, he grabbed petitioner, ripping the petitioner's shirt. Petitioner then ran off around the building. A short time later, Petitioner returned to Fred's Tavern, shirtless, and told his friends, "I fucked up." multiple times. He and his friends then left the bar. T. 165, 167-71, 201, 203, 205-08, 224, 297-99, 317-19.

Stanley suffered a puncture wound in his chest that required stitches. Police Officers Kenneth Mignemi and Dana Carson recovered a green-handled steak knife wrapped in a shirt from a garbage can in the front of Fred's Tavern, and another shirt several feet from the garbage can. Both shirts were identified as the clothing the petitioner was wearing the night of the fight, and the knife was identified as the one used to stab Stanley. When tested by a forensic biologist at the Monroe County Public Safety Laboratory, one shirt and the knife were found to contain human blood. Hours later, Mount Morris Police Officers found petitioner at a friend's house, curled up in a ball hiding beneath a bedroom window. Police Officer Kenneth Mignemi knocked on the door several times and ordered petitioner to leave the house, and, approximately 20 minutes later, petitioner came out and was arrested. T. 171-72, 237, 246, 251, 266, 268-73, 319-20.

## 2. The Petitioner's Case

Defense counsel called three witnesses to testify regarding the identification of the clothing recovered from the scene at Fred's Tavern. Mario Lopez testified that one of the shirts found at the scene outside of Fred's Tavern belonged to Edwin Hernandez. Lopez further testified that he saw the petitioner at the bar, but did not see him after the fight ended. Maria Cruz, petitioner's friend and sister of Luisa and Pedro Cruz, testified that one of the shirts recovered at the scene belonged to Leo Sanchez, and the other belonged to Edwin Hernandez. She also recalled that the petitioner, Pedro, and Luisa were at her apartment before they went to Fred's Tavern that night, and that she did own light-green steak knives. Maria insisted, however, that the steak knife recovered at the scene did not belong to her and that she was not missing any knives from her apartment. She further recounted that the petitioner had a thin goatee and wore a beige-colored fleece with a hood the night of the stabbing. Maria admitted that she did not see the fight outside of Fred's Tavern that evening. T. 330-33, 338-42.

Finally, Jose Pimentel Diaz, a friend of the petitioner, testified that one of the shirts recovered belonged to Edwin Hernandez and that Hernandez was wearing the shirt on the night of the fight. Diaz also testified that although he saw petitioner that night at Fred's Tavern, the petitioner was not outside during the fight. Diaz acknowledged that he did not see the stabbing. T. 345-48.

**B.  Direct Appeal**

Petitioner, through counsel, appealed his conviction to the Appellate Division, Fourth Department, contending that: (1) the evidence presented at trial was legally insufficient; (2) the prosecutor failed to timely disclose <u>Brady</u> material; (3) the verdict was against the weight of the evidence; (4) the trial court erroneously denied petitioner's request to discharge trial counsel; (5) petitioner's right to self-representation was violated by the trial court's refusal to hear his *pro se* claims; (6) petitioner was improperly sentenced as a second felony offender; and (7) the sentence was harsh and excessive. <u>See</u> Petitioner's ("Pet'r") App. Br. (Dkt. #8). Petitioner also filed a *pro se* supplemental brief claiming that: (1) the prosecution failed to provide sufficient notice of a statement allegedly made by him; (2) the prosecution committed a <u>Brady/Rosario</u> violation by failing to disclose the criminal record of one of their witnesses; and (3) the prosecutor's inflammatory summation remarks deprived him of a fair trial. <u>See</u> Pet'r Supp. Br.  (Dkt. #8).

The Fourth Department unanimously affirmed petitioner's conviction. <u>People v. Bonilla</u>, 298 A.D.2d 871 (4th Dept. 2002) <u>lv. denied</u> 100 N.Y.2d 536 (2003). The Appellate Division rejected all petitioner's claims and concluded that the contentions in his *pro se* brief also lacked merit.

**C.  Post-Conviction Relief**

On February 8, 2005, petitioner filed a motion for vacatur pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10,

alleging that he had been denied his constitutional rights to effective assistance of trial counsel and a fair trial. See Pet'r 440.10 Mot. (Dkt. #27). Specifically, petitioner maintained that trial counsel was ineffective because she failed to impeach the credibility of some of the prosecution's witnesses with their criminal histories and for inconsistent testimony. As to his due process claim, petitioner contended that he had been denied a fair trial based on arresting Officer Kenneth Mignemi's alleged perjured testimony at trial. The state court denied the motion on all grounds on procedural grounds and alternatively on the merits. Decision and Order, No. 2000-287, 8/3/2005. (Dkt. #27).

On May 12, 2005, petitioner filed a petition for writ of *error coram nobis* in the Appellate Division, Fourth Department, alleging that he had been denied effective assistance of appellate counsel "because counsel failed to raise issue [sic] on his direct appeal that would have been [sic] reversed or at the very least resulted in modification" of his conviction, and set forth five grounds for relief. Pet'r Coram Nobis Mot. (Dkt.# 27). The Appellate Division denied his motion on September 30, 2005. People v. Bonilla, 21 A.D.3d 1443 (4th Dept.), lv. denied 5 N.Y.3d 881 (2005).

## D.    Petition for Habeas Corpus

Petitioner filed an initial habeas corpus petition pursuant to 28 U.S.C. § 2254 on March 23, 2004. (Dkt. #1). This Court subsequently granted petitioner a stay *nun pro tunc* so as to allow him to exhaust additional claims before state court. (Dkt. #20). Following exhaustion, the stay was lifted, and petitioner filed an

amended habeas petition on May 22, 2006. (Dkt. #22). In his amended petition, petitioner raised the four original claims that he raised in his initial petition for habeas corpus: (1) the prosecution violated <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); (2) the conviction was against the weight of the evidence and the evidence at trial was legally insufficient; (3) prosecutorial misconduct; and (4) the trial court erroneously denied petitioner's request to substitute counsel. Amended Pet. ¶ 12(A)-(D). (Dkt. #22). Petitioner also raised the newly exhausted claims presented in his post-conviction motions: (5) ineffective assistance of trial counsel; (6) the use of perjured testimony deprived him of a fair trial; and (7) ineffective assistance of appellate counsel. Amended Pet. ¶ 12(D), Attach. at 10-11. (Dkt. #22).

For the reasons that follow, the Court finds that the petitioner is not entitled to habeas corpus relief and this petition is dismissed.

**GENERAL PRINCIPLES APPLICABLE TO FEDERAL HABEAS REVIEW**

**A.    Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence

presented in state court.  See 28 U.S.C. § 2254(d)(1),(2); Williams
v. Taylor, 529 U.S. 362, 375-76 (2000).

**B.    Exhaustion Requirement and Procedural Default**

"An application for a writ of habeas corpus on behalf of a
person in custody pursuant to a judgment of a State court shall not
be granted unless it appears that . . . the applicant has exhausted
the remedies available in the courts of the State . . . ." 28
U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S.
838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825,
828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The
exhaustion requirement is not satisfied unless the federal claim
has been 'fairly presented' to the state courts." Daye v. Attorney
General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied,
464 U.S. 1048 (1984). "The exhaustion requirement is principally
designed to protect the state courts' role in the enforcement of
federal law and prevent disruption of state judicial proceedings,
and is not satisfied unless the federal claim has been 'fairly
presented' to the state courts." Jimenez v. Walker, 458 F.3d 130,
148-149 (2d Cir. 2006) (internal citations and quotation marks
omitted).

However, "[f]or exhaustion purposes, 'a federal habeas court
need not require that a federal claim be presented to a state if it
is clear that the state court would hold the claim procedurally
barred.'" Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (quoting
Harris v. Reed, 489 U.S. 255, 263 n.9 (1989); other citations
omitted). Under such circumstances, a habeas petitioner "no longer

has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. Section 2254(b)." Grey, 933 F.2d at 120. The procedural bar that gives rise to the finding that the claim should be deemed exhausted works a forfeiture and precludes federal court litigation of the merits of the claim absent a showing of cause for the procedural default and prejudice resulting therefrom or by demonstrating that failure to consider the claim will result in a fundamental miscarriage of justice. See Wainwright v. Sykes, 433 U.S. 72, 87-91 (1977).

C.   **Adequate and Independent State Ground Doctrine**

It is a well-settled aspect of federal habeas jurisprudence that if "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred" absent (1) a showing of cause for the default and actual prejudice attributable thereto, or (2) a showing that failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991). A state ground will create procedural default sufficient to bar habeas review if the state ground first was an "independent" basis for the decision; this means that "the last state court rendering a judgment in the case clearly and expressly state[d] that its judgment rests on a state procedural bar." In addition, the state procedural bar must be "adequate" to support the judgment-that is, it must be based on a rule that is "'firmly established and regularly followed' by the

state in question ." <u>Garcia v. Lewis</u>, 188 F.3d 71, 77 (2d Cir. 1999) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)).

If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. <u>See</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding" so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

## MERITS OF THE PETITION

### A. <u>Brady</u> Violation

Petitioner first alleges that he is entitled to habeas relief because the prosecution did not timely comply with its obligation under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). Specifically, he claims that he did not receive the following information prior to trial: (1) Officer Mignemi's report that Pedro Cruz had a knife the night of the stabbing; (2) Pedro Cruz's statement that his fingerprints were on the green-handled knife because he had used it earlier in the evening to make a sandwich; and (3) a statement from Michael Gaddy identifying someone other than petitioner who may have stabbed the victim. Pet'r Mem. 14-15. (Dkt. #23). When raised on direct appeal, the Appellate Division held that the prosecutor's delay in turning over this material did not require reversal because the petitioner was "given a meaningful opportunity to use . . . the exculpatory material to cross-examine the People's

witnesses or as evidence during his case." <u>People v. Bonilla</u>, 298
A.D.2d 871 (4th Dept. 2002) (internal citation omitted).

It is well-settled that "[a] defendant has a right, guaranteed
by the Due Process Clause of the Federal and State Constitutions,
to discover favorable evidence in the People's possession which is
material to either guilt or punishment." <u>Brady</u>, 373 U.S. at 87.
"Favorable evidence includes not only evidence that tends to
exculpate the accused, but also evidence that is useful to impeach
the credibility of a government witness." <u>United States v. Coppa</u>,
267 F.3d 132, 139 (2d Cir. 2001). A prosecutor, however, need not
turn over exculpatory material on demand before trial. <u>See</u>
<u>generally</u>, <u>Coppa</u>, 267 F.3d 132. Rather, delayed disclosure will
not result in a <u>Brady</u> violation unless there is a reasonable
probability that earlier disclosure of the evidence would have
produced a different result. <u>Id.</u> at 144. "Evidence is not
suppressed if the defendant either knew, or should have known, of
the essential facts permitting him to take advantage of any
exculpatory evidence." <u>Leka v. Portuondo</u>, 257 F.3d 89, 100
(2d Cir. 2001)(internal citations and quotations omitted).

Here, petitioner has not demonstrated that earlier disclosure
would have changed the outcome of his trial, nor that the evidence
was in fact "suppressed". Petitioner generally avers that the
defense would have been able to use the statements to build a more
plausible defense and effectively cross-examine the prosecution's
witnesses. <u>See</u> Pet'r Mem., 14-16. However, the record indicates

that the statements were provided to the defense prior to jury selection, defense counsel acknowledged that she had reviewed them, and proceeded to use the statements in cross-examining Gaddy, Pedro Cruz and Officer Megnemi, and also during summation. T. 140, 178-80, 189-90, 239, 362-64.   It is apparent from the record that counsel had a meaningful opportunity to use the impeachment evidence at trial.  See Leka, 257 F.3d at 103.  Petitioner has not demonstrated prejudice as a result of the delayed disclosure of the statements and is thus not entitled to habeas relief on this ground.  The Appellate Division's holding, therefore, was a correct application of Brady.

B.    **Sufficiency of the Evidence**

Petitioner next argues that his conviction was not supported by legally sufficient evidence because the prosecution did not prove beyond a reasonable doubt the elements of Attempted Assault in the First Degree.[2] Pet'r Mem. 20-23. (Dkt. #23). Respondent asserts that petitioner failed to exhaust this argument in the state courts because it was raised on direct appeal as a matter of state law only. Resp't Mem. 15-16 (Dkt. #9).  This Court agrees.

When the petitioner presented his sufficiency-of-the-evidence claim on direct appeal, it was framed only as a violation of New York State's statutory law.  See Pet'r Appellate Br., 13-16.

_____

[2] Petitioner also asserts that the verdict was against the weight of the evidence. Such claims are not cognizable on habeas review. See Jones v. Artus, 615 F.Supp.2d 77 (W.D.N.Y. 2009); Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

(Dkt. #8). A petition can satisfy the exhaustion requirement, even if the constitutional claim was not specified on appeal, providing it was "fairly presented" to the state appellate court. Daye v. Att'y Gen. of New York, 696 F.2d 186, 191 (2d Cir. 1982), cert. denied, 464 U.S. 1048 (1984). Under Daye, a habeas petitioner can "fairly present" the issue to the appellate court by: 1) citing "pertinent federal cases employing constitutional analysis," 2) relying on "state cases employing constitutional analyses in like factual situations," 3) asserting the claim in terms that "call to mind" a specific constitutional right, or 4) alleging a pattern of facts "well within the mainstream of constitutional litigation." 696 F.2d at 194.

Petitioner cited no federal constitutional law, nor did he maintain that the alleged errors contravened specific provisions of the Constitution in his direct appeal. Nor did he reference a constitutional provision in the point-heading of his argument. Cf. Davis v. Strack, 270 F.3d (2d Cir. 2001). Consequently, the state courts were not adequately apprised of a federal constitutional claim. Because petitioner's claim was not fairly presented to the state court on direct appeal, he cannot now collaterally attack his conviction in state court on those grounds. See C.P.L. § 440.10(2)(c).[3] As the petitioner no longer has remedies

_____

[3] "[T]he court must deny a motion to vacate a judgment when . . .[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an

available in the state courts, his claims are deemed exhausted and procedurally barred. Petitioner has not attempted to show "cause" and "prejudice" resulting from the procedural default, nor has he made a claim of actual innocence. Accordingly, habeas review of his insufficiency-of-the-evidence claim is foreclosed.

## C.    **Prosecutorial Misconduct**

Petitioner next claims that the prosecutor's conduct during trial deprived him of due process because the prosecutor's comments during trial and summation were prejudicial. Amended Pet. ¶ 12(D), Attach. at 10. (Dkt. #22). He asserts, *inter alia*, that the prosecutor shifted the burden of proof when he argued at trial that: (1) petitioner attempted to blame Pedro Cruz for the crime; (2) defense counsel promised to prove that Pedro Cruz stabbed the victim; and (3) the defense witnesses did not establish petitioner's innocence. Id. at 28-29.

To obtain relief based on a claim of prosecutorial misconduct, the habeas petitioner must demonstrate that the "prosecutor [engaged in] ... egregious misconduct ... amount[ing] to a denial of constitutional due process." Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990); see also Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974). "It is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986). Rather, the prosecutor's misconduct must have caused the defendant "substantial prejudice" by "'so infecting

appeal actually perfected by him". N.Y. Crim. Proc. Law § 440.10(2)(c).

the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>United States v. Shareef</u>, 190 F.3d 71, 78 (2d Cir. 1999) (quoting <u>Darden v. Wainwright,</u> 477 U.S. 168, 181 (1986)).

In determining whether there has been substantial prejudice to the petitioner, three factors are of primary importance: "'the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct.'" <u>United States v. Perez</u>, 144 F.3d 204, 209 (2d Cir. 1998)(quoting <u>United States v. Melendez</u>, 57 F.3d 238, 241 (2d Cir. 1995)).

Petitioner complains that the prosecution shifted the burden of proof by arguing that petitioner implicated Pedro Cruz in the stabbing. During summation, the prosecutor made the following remarks:

> The defendant argues that – basically the defense is, he didn't do it. But we didn't hear any testimony from any of the witnesses that she put . . . on the stand saying that he didn't do it. The only testimony you heard is from these individuals was that these shirts may belong to somebody else.

T. 374

Assuming, *arguendo*, that this comment was beyond the boundaries of fair comment on the evidence at trial, <u>see generally Roman v. Filion</u>, 2005 WL 1383167 at *18 (S.D.N.Y. June 10, 2005)(Under New York law, statements during summation are permissible if they constitute a fair comment on the evidence at trial), "[i]t is not enough, however, that the prosecutor's

remarks were improper; rather . . . 'constitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.'" <u>Floyd v. Meachum</u>, 907 F.2d 347, 355 (2d Cir. 1990) (quoting <u>Garofolo v. Coomb</u>, 804 F.2d 201, 206 (2d Cir. 1986)). After summation, the trial court adequately instructed the jury with respect to the different burdens involved in petitioner's case. Based on a review of the record, this Court does not find that the prosecutor's comments prejudiced petitioner, since there is no reasonable likelihood that the outcome of the trial would have been different absent the objectionable comments. The Appellate Division's holding that petitioner's prosecutorial misconduct claim was meritless was not contrary to or an unreasonable application of Supreme Court precedent.

**D.    Right to Counsel Claims**

    **1.    Substitution of Assigned Counsel; Pro Se Motions**

Petitioner next argues that he was deprived of his right to the assistance of counsel of his own choosing when the trial court denied his request to substitute counsel. He further argues that his right to proceed *pro se* was violated by the court's refusal to entertain his *pro se* trial motions. Pet'r Mem. at 31. (Dkt. #23). When raised on direct appeal, the Appellate Division rejected these claims, holding that "the court made an appropriate inquiry and determined that there was no good cause for substitution of assigned counsel," and that the court did not abuse its discretion

in refusing to entertain petitioner's *pro se* motions.  <u>People v. Bonilla</u>, 298 A.D.2d 871 (4th Dept. 2002).

The Sixth Amendment grants the accused in a criminal matter the right to be represented by counsel at trial. U.S. Const. Amend. VI.  This encompasses the right to conflict-free representation by counsel who will act with a single-minded devotion on his or her own client's behalf.  <u>See</u> <u>Wood v. Georgia</u>, 450 U.S. 261 (1981).  It does not, however, guarantee a "meaningful relationship" between defendant and counsel.  <u>See</u> <u>Morris v. Slappy</u>, 461 U.S. 1, 13-14 (1983).  Accordingly, "once trial has begun, a defendant has no 'unbridled right to reject assigned counsel and demand another' and that courts must impose restraints on the right to reassignment of counsel in order to avoid the defendant's manipulation of the right 'so as to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice.'" <u>United States v. John Doe No. 1,</u> 272 F.3d 116, 122 (2d Cir. 2001)(quoting <u>McKee v. Harris</u>, 649 F.2d 927, 931 (2d Cir. 1981), <u>cert. denied</u>, 537 U.S. 851 (2002).

To determine whether a trial court abused its discretion by denying a motion to substitute trial counsel, the reviewing court must consider: (1) whether the defendant made a timely motion for new counsel; (2) whether the trial court adequately inquired into the matter; and (3) whether the conflict was so great as to result in a total lack of communication preventing an adequate defense. <u>U.S. v. Simeonov</u>, 252 F.3d 238, 241 (2d Cir. 2001) (internal

citations and quotations omitted); <u>accord</u> <u>John Doe No. 1</u>, 272 F.3d at 122.

Although petitioner's motion for new counsel was timely, the trial court's decision to deny petitioner's motion did not constitute an abuse of discretion. First, the trial court did not summarily deny petitioner's motion. Rather, the record indicates that the court adequately inquired into the matter by permitting petitioner to explain his motion on the record, and giving counsel an opportunity to respond to petitioner's complaint. Motions Tr. Dated 2/22/2001 at 2-3.

Second, petitioner has not shown that a conflict existed, or that any conflict "prevent[ed] an adequate defense." When given the opportunity to speak to the trial court, petitioner asserted that Ms. Clark failed to cross-examine a witness at the felony hearing and simply concluded that his attorney "was not doing her best for me." <u>Id.</u> at 2. However, there is nothing in the record to indicate that Ms. Clark did not proceed as her client wished or that she did not represent petitioner in a fair and faithful manner. Petitioner has thus failed to demonstrate that any alleged conflict between him and his attorney was so great as to result in a total breakdown of communication preventing an adequate defense. <u>See</u> <u>Whitfield v. Bennett</u>, 2007 WL 3232499 at *7 (W.D.N.Y. Oct. 31, 2007). Accordingly, the Appellate Division's determination that the trial court appropriately denied petitioner's motion to

substitute counsel did not contravene or unreasonably apply Supreme Court law.

Petitioner next claims that the state court abused its discretion in refusing to review his *pro se* pre-trial motions. Pet'r Mem. 33-34. On March 8, 2001, the scheduled date for argument of the defense omnibus motions, Ms. Clark informed the County Court that the defendant had provided her with a number of additional motions that he also would like filed. Motions Tr. dated 3/8/2001 at 4-5. The trial court instructed defense counsel that her motions could be amended should she decide to adopt petitioner's *pro se* motions, and further refused to hear a motion argument made by both the attorney and the defendant. Id. at 5.

Where a criminal defendant accepts representation of assigned counsel, he delegates the power to decide issue of trial strategy to the attorney. <u>Faretta v. California</u>, 422 U.S. 806, 820-21 (1975). While the Sixth Amendment guarantees a criminal defendant's right to counsel, it also "implies a right to self-representation." <u>Faretta</u>, 422 U.S. at 821. If a defendant decides to represent himself, the state court may appoint a stand-by counsel to assist the defendant. <u>Id.</u> at 834. The state court is not, however, required to permit "hybrid representation". <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 183 (1984). The decision to grant or deny such hybrid representation "lies solely within the discretion of the trial court." <u>U.S. v. Tutino</u>, 883 F.2d 1125 (2d Cir. 1989) <u>cert. denied</u>, 493 U.S. 1081 (1990). Thus, "absent a defendant's

invocation of his right to self-represent, a defendant is 'not entitled to have his *pro se* motions entertained by the court alongside those of counsel.'" <u>Potter v. Green</u>, 2009 WL 2242342 at *11 (E.D.N.Y. July 24, 2009)(quoting <u>Delgado v. Duncan</u>, 2003 WL 23185682 at *5 (E.D.N.Y. Nov. 4, 2003).

In the present case, the trial court correctly exercised its discretion by refusing to hear petitioner's *pro se* motions. Three days earlier, defense counsel filed an omnibus motion which raised the same claims petitioner wished to raise. <u>See</u> Resp't Ex. B. (Dkt. #8). Moreover, the trial court did not summarily refuse to hear petitioner's claims, and did permit defense counsel to adopt any of petitioner's claims she wished. Because petitioner did not invoke his right to self-represent, there is no constitutional error as a result of the trial court refusing to separately hear his *pro se* motions. Petitioner has failed to establish habeas relief on this ground, and it is therefore denied.

### 2. Ineffective Assistance of Trial Counsel

Petitioner claims, as he did in his C.P.L. § 440.10 motion, that his trial counsel rendered ineffective assistance by failing to impeach the prosecution's witnesses with their prior criminal records and prior inconsistent statements. Pet'r Mem. 36-42. (Dkt. #23).

The Livingston County Court denied petitioner's § 440.10 motion in its entirety, ruling that the claim was procedurally barred because it was a matter of record for direct appeal, and, in

the alternative, was without merit.[4]  The court commented that petitioner was provided with "meaningful representation". Decision and Order, No. 2000-287 dated 8/3/2005. (Dkt. #27).

As respondent argues, the trial court relied upon C.P.L. § 440.10(2)(c), which is an adequate and independent state ground that bars federal habeas review of this claim unless petitioner can overcome the procedural default. E.g. Sweet v. Bennett, 353 F.3d 135, 139-40 (2d Cir. 2003).  Petitioner, in his traverse, attempts to show cause on the basis that trial counsel's ineffectiveness resulted in the procedural default, i.e., failing to raise the issue on appeal.  Pet'r Reply Mot. 6-8 (Dkt. #31).  The Supreme Court has acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve a claim for review in state court will suffice to establish cause for a procedural default.  Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (citing Murray v. Carrier, 477 U.S. 478, 489 (1986) ("[A] claim of ineffective assistance [must generally] be presented to the state courts as an independent claim before it may be used to establish cause of a procedural default.")).  However, "[n]ot just any deficiency in counsel's performance will do[;]" rather, "the

_____

[4] The 440.10 court held that because alleged failings of counsel had "occurred in the course of recorded trial proceedings, a sufficient factual basis existed in the record to permit proper appellate review of the claims." Although the court cites to subsection 440.10(2)(a), it appears that the court was relying on subsection (2)(c), which provides that a court must deny a § 440.10 motion when "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure . . . to raise such ground or issue upon an appeal actually perfected by him[.]" C.P.L. § 440.10(2)(c).

assistance must have been so ineffective as to violate the Federal Constitution." Id. (citing Murray, 477 U.S. at 489).

Here, however, petitioner does not show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray, 477 U.S. at 488. It should be noted that petitioner had a different attorney at the appellate level, so petitioner's argument that his failure to raise the ineffective assistance of counsel claim on direct appeal was a result of his trial counsel's incompetence is simply implausible. Petitioner fails to actually show or even allege cause for the procedural default in his traverse, but rather laboriously recites his initial claims of trial counsel's shortcomings.

Because petitioner has not established cause for the default, it is unnecessary to consider whether prejudice resulted from the alleged violations of federal law. Fernandez v. Leonardo, 931 F.2d 214, 217 (2d Cir.), cert. denied, 502 U.S. 883 (1991)(determination that petitioner lacked cause for default eliminates need to determine prejudice). He also does not allege "actual innocence". Calderon v. Thompson, 523 U.S. 538, 559 (1998). Petitioner's claim is therefore procedurally barred and may not be considered on habeas review.

### 3. Ineffective Appellate Counsel

Petitioner next claims that he was denied his constitutional right to effective assistance of appellate counsel as a result of counsel's failure to raise on direct appeal the claims that:

(1) second-degree assault was an inclusory concurrent count of attempted first-degree assault, and he should not have been convicted of both crimes; (2) he had been denied due process by the admission of inflammatory photographs of Stanley's head and facial injuries; and (3) he had received ineffective assistance of trial counsel. See Pet'r Mem. 50-75. These claims were also raised in a petition for writ of *error coram nobis,* which the Appellate Division denied on the merits. 21 A.D.3d 1443 (4th Dept. 2005).

A claim for ineffective assistance of appellate counsel is evaluated upon the same standard as a claim of ineffective assistance of trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992), cert. denied, 508 U.S. 912 (1993)). A petitioner alleging ineffective assistance of appellate counsel must prove both that appellate counsel was objectively unreasonable in failing to raise a particular issue on appeal, and that absent counsel's deficient performance, there was a reasonable probability that defendant's appeal would have been successful. Mayo, 13 F.3d at 533-34; Smith v. Robbins, 528 U.S. 259, 285 (2000); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001).

Appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Smith v. Robbins, 528 U.S. at 288 (citing Jones v. Barnes, 463 U.S. 745, 750-54 (1983)). The habeas court should not second-guess the

reasonable professional judgments of appellate counsel as to the most promising appeal issues. Jones, 463 U.S. at 754; see also Jackson v. Leonardo, 162 F.3d 81, 85 (2d Cir. 1998). Thus, a petitioner may establish constitutionally inadequate performance only by showing that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo, 13 F .3d at 533.

Petitioner fails to establish appellate counsel's inadequate performance. In the instant case, appellate counsel filed a thirty-page appellate brief in which he raised seven legal issues aimed at securing a reversal of petitioner's conviction or a reduction of his sentence, including, among other things, that the evidence was insufficient to support the conviction for attempted first-degree assault; the prosecution had committed a Brady violation; and that petitioner's sentence was harsh and excessive. See Pet'r Appellate Br. 4-30 (Dkt. # 8). The issues were researched and argued cogently. Counsel was entitled to devote his energy to those issues that, if successful, would have the greatest chance of reducing petitioner's sentence, or overturning his conviction, and thus, he was entitled to omit other issues. Jones, 463 U.S. at 751-53. It is not the province of this Court to "second guess [counsel's] reasonable professional judgment[]" in this matter, id. at 754, considering that the claims advanced by petitioner in his coram nobis application were substantially weaker, if not wholly

meritless, and unlikely to have affected petitioner's conviction in any meaningful way.

### a. Failure to Challenge Conviction of Inclusory, Concurrent Counts

With respect to petitioner's claim that either the charge of attempted first-degree assault should have been dismissed from the indictment, or the conviction on that charge should have been reversed, petitioner operates under a misapprehension of New York law. Second-degree assault is not an inclusory concurrent count of first-degree assault, nor is it impossible to be convicted of both crimes, because the crimes involve different elements.[5] See People v. Lewis, 46 A.D.3d 943, 947 (3d Dept. 2007)("[I]t surely is possible to attempt to commit an assault in the first degree without causing the physical injury necessary for assault in the second degree"). Because there was no sound argument for appellate counsel to have made with respect to this specific claim, counsel was not ineffective for failing to do so. See Andreu v. U.S., 2001 WL 1488190, at *5 (S.D.N.Y. Nov. 21, 2001) (Counsel "cannot be faulted with failing to raise futile arguments.").

---

[5] Under New York law, "[a] person is guilty of assault in the first degree when, [w]ith intent to cause *serious physical injury* to another person, he causes such injury to such person or to a third person by means of a deadly weapon or dangerous instrument. N.Y. Penal Law § 120.10(1)(emphasis added). "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime. Penal Law § 110.00. On the other hand, a person is guilty of second-degree assault when, "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument. § 120.05(2). Thus, although second-degree assault involves intent and the actual infliction of physical injury, an attempt to commit first-degree assault involves an intent to inflict a more serious injury, without actual infliction of such injury.

### b. Failure to Challenge the Introduction of Photographic Evidence at Trial

It would have likewise been futile for appellate counsel to have raised an issue challenging the introduction of photographs showing Stanley's other injuries, including those to his head and to his face. The photographs were entered into evidence without objection from defense counsel, therefore the issue was not preserved for appellate or post-judgment review. See C.P.L. § 470.05(2).

Even if the issue could have been raised on appeal, petitioner's assertion that the photographs should not have been admitted into evidence is without merit. The record reflects that trial counsel moved to prevent the prosecution from introducing photographs of the victim's head and facial wounds, since petitioner was not accused of causing those injuries. The trial transcript reads, in pertinent part:

| | |
|---|---|
| Ms. Clark: | We obviously have no objection to the stab wound pictures being introduced, but we believe the rest of the pictures of the victim would be prejudicial and highly inflammatory to the jury. My client's not been charged with these crimes and I ask they not be published or brought into evidence |
| The Court: | Those issues I believe can be addressed at the time the photo is offered; you can raise that objection and I will review it. |
| ... | |
| Mr. Rowcliffe: | Judge, I don't have any intention—I'm going to use the photos of the stab wound, but there's going to testimony regarding the other incidents and I |

|               |                                                              |
|---------------|--------------------------------------------------------------|
|               | believe the doctor and EMT will have to talk about other injuries. |
| Ms. Clark:    | I have no objection to that.                                 |
| The Court:    | So no issue?                                                 |
| Ms. Clark:    | As long as the photos aren't introduced; that's correct.    |

T. 141-42.

During trial, the victim testified to his injuries, and showed the jury the stab wound in his chest. T. 227. The record indicates the photographs introduced as evidence pertained to Stanley's stab wounds. Defense counsel was given the opportunity to object and did not. T. 228-30. Finally, petitioner acknowledges in his memorandum that he is "not exactly certain which photos . . . were introduced into evidence . . . ." Pet'r Mem. at 62. Because there is no factual or legal basis for this claim, appellate counsel's failure to raise it on direct appeal was not unreasonable.

### c. Failure to Argue Ineffective Assistance of Trial Counsel on Appeal

Finally, petitioner argues that his appellate counsel was ineffective by virtue of failing to raise the issue of ineffective assistance of trial counsel. As to the failure to request DNA testing on the knife, trial counsel's failure to do so was consistent with her reasonable professional judgment. Strickland, 466 U.S. at 686, 689-90. Because the theory of the defense centered on misidentification, it was logical for counsel to have declined scientific DNA testing, the results of which could have established conclusively that petitioner had stabbed Stanley,

severely undermining a viable defense. The petitioner cannot overcome the presumption that, under the circumstances, the challenged action . . . [was] a sound trial strategy." Id. at 689 (citations and internal quotations omitted).

Because there is no merit to petitioner's underlying claims regarding the improper charges and improper introduction of photographic evidence, trial counsel was not required to have posed objections on the record to preserve those issues. See, e.g., United States v. Arena, 180 F.3d 380, 396 (2d Cir.1999), cert. denied, 531 U.S. 811 (2000)("failure to make a meritless argument does not amount to ineffective assistance."). Thus, petitioner cannot establish ineffective assistance of appellate counsel for failure raise the issue of ineffective trial counsel on direct appeal.

In sum, the state court's rejection of petitioner's claim that appellate counsel rendered ineffective assistance by omitting certain claims from the counseled brief on direct appeal is neither contrary to, nor an unreasonable application of Strickland. Petitioner is not entitled to habeas relief on this ground.

## D. Use of Perjured Testimony

As he claimed in his § 440.10 motion, petitioner now alleges that he was deprived of due process as a result of perjured testimony presented at trial.[6] Specifically, Officer Mignemi

---

[6] The § 440.10 court did not address the perjury claim on the merits, so the Court will employ a de novo analysis of this issue. See Torres v. Berbary, 340 F.3d 63, 68 (2d Cir. 2003).

testified that, following the arrest, petitioner had told him [Mignemi] that Pedro Cruz's fingerprints would be found on the steak knife used to stab Stanley.  Such testimony, according to petitioner, is inconsistent with the arrest report, in which Officer Mignemi failed to memorialize the petitioner's statement about the fingerprints.  Pet'r Mem. 43-47.

Claims for wrongful conviction based on perjured testimony are analyzed under the Due Process Clause of the Fourteenth Amendment. Napue v. Illinois, 360 U.S. 264, 269 (1959). Under this standard, the Supreme Court has held that a conviction must be set aside if (1) the prosecution actually knew of the false testimony, and (2) there is any reasonable likelihood that the false testimony could have affected the judgment of the jury. Drake v. Portuondo, 553 F.3d 230, 241 (2d Cir. 2009).

Petitioner's argument fails for a variety of reasons.  First, petitioner does not deny ever having made such a statement, but merely claims that, because the arrest report does not refer to such a statement, Mignemi's testimony necessarily constitutes perjury.  An inconsistency between the arrest report and Mignemi's testimony at trial does not render Mignemi's testimony perjurious. See United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001), cert. denied, 535 U.S. 1042 (2002) ("A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty

memory. Simple inaccuracies or inconsistencies in testimony do not rise to the level of perjury.").

Second, Mignemi's testimony was elicited by defense counsel during cross-examination, and was exculpatory in nature in that it advanced the defense's theory that someone other than petitioner had stabbed Stanley.  T. 239.  As such, petitioner cannot show a due process violation as a result of the introduction of Mignemi's testimony.  Assuming, *arguendo*, Mignemi's testimony was false, it was not of an "extraordinary nature" to trigger a due process violation in that it "must leave the court with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted."  <u>Sanders v. Sullivan</u>, 863 F.2d 218, 225-26 (2d Cir. 1988).  Given the evidence on the record that petitioner had committed the assault, it is dubious to argue that there was reasonable doubt as to petitioner's guilt absent Mignemi's testimony.

Since petitioner has failed to demonstrate an underlying constitutional violation occurring at trial, let alone the existence of actual perjury, the petitioner's claim that his conviction was based on false testimony is denied.

## CONCLUSION

For the reasons stated above, petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because petitioner has failed to make a "substantial showing of a denial of a constitutional right,"

28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

_____
S/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:     August 26, 2009
           Rochester, New York